```
 1
 2
 3
 4
 5
 6
 7
```

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JANET SEGLE,<br><br>               Plaintiff,<br><br>   v.<br><br>PNC MORTGAGE, a division of PNC Bank, NATIONAL ASSOCIATION, sbn, NATIONAL CITY MORTGAGE, NORTHWEST TRUSTEE SERVICE INC.,<br><br>             Defendants. | CASE NO. 10-5655RJB<br><br>ORDER ON PNC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (B)(6), ON NORTHWEST TRUSTEE SERVICE INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (B)(5) AND TO JOIN PNC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (B)(6), AND ON PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE AMENDED COMPLAINT |

    This matter comes before the Court on PNC's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (b)(6) (Dkt. 23), on Northwest Trustee Service Inc.'s ("NWTS") Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (b)(5) and to Join PNC's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (b)(6) (Dkt. 26), and on Plaintiff's motion for leave to amend her Amended Complaint (Dkt. 30). The Court has considered the pleadings filed regarding the motions and the file.

I.  **FACTS AND PROCEDURAL HISTORY**

On September 14, 2010, Plaintiff, acting pro se, filed this action regarding a loan made to her to refinance her primary residence, commonly known as: 203 Some Day Way, Sequim, Washington. Dkt. 1. The property is located in Clallam County, Washington. *Id.* Plaintiff filed her Verified First Amended Complaint on January 18, 2011, alleging that Defendants violated her rights under the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*. Dkt. 20. Plaintiff references "RESPA," "Reg Z, §§ 226.15(d)(2), 226.23(d)(2), " and "FDCPA." *Id.* She also makes a claim to Quiet Title. *Id*. Plaintiff seeks declaratory relief, "rescission," and an order "compelling said Defendant(s) and each of them to transfer legal title of the subject property to Plaintiff herein." *Id.*

Plaintiff does not dispute that her claims relate to a loan she received from National City Mortgage, a division of National City Bank ("National City") on April 24, 2007. Dkt. 24, at 14. Plaintiff does not dispute that she executed and delivered to National City a promissory note in the principal amount of $383,000.00 on April 24, 2007. Dkt. 24, at 14-16. She does not dispute that, the same day, she executed a deed of trust granting National City a security interest in the property with the address of: 203 Some Day Way, Sequim, Washington, 98382; Clallam County Assessor's parcel or account number: 043020-410050. Dkt. 24, at 18-33. The deed of trust named "Old Republic Title" as trustee. Dkt. 24, at 19. The deed of trust grants the trustee the power of sale in the event of default. *Id.* The deed of trust was recorded on April 30, 2007, with the Clallam County, Washington Auditor. *Id.*

According to Defendant PNC Bank, on November 6, 2009, National City merged with Defendant PNC Bank. Dkt. 24, at 1. For the purpose of this motion only, the Court will accept this uncontested assertion. PNC argues that "as part of that merger, PNC Bank acquired all

1   rights, title, and interest in the Note and Deed of Trust at issue in this litigation, and, thus, is the

2   current holder of the Note and Deed of Trust, and the beneficiary of all rights thereunder." Dkt.

3   23, at 3, (*citing* Dkt. 24)

4       Plaintiff's Amended Complaint alleges that she sent a letter to Defendant PNC in May of

5   2010, which she asserts is a Qualified Written Request under RESPA.  Dkt. 20.  Plaintiff

6   attached that letter to her Amended Complaint.  Dkt. 20-6.

7       Plaintiff's Complaint alleges that in June of 2010, she sent "Defendants" a "Notice of Right

8   to Cancel." Dkt. 20, at 5.  She does not state that she tendered, or was able to tender, the amount

9   outstanding on the mortgage.

10      On August 25, 2010, an Appointment of Successor Trustee was recorded.  Dkt. 26, at 9.  The

11  Appointment of Successor Trustee appoints NWTS as successor trustee under the deed of trust

12  and gives NWTS all the powers of the original trustee.  Dkt. 26, at 9.

13      On September 24, 2010, NWTS recorded a Notice of Trustee's Sale concerning the subject

14  property.  Dkt. 26, at 11.  On March 10, 2011, after the pending motions were filed, NWTS

15  recorded a Trustee's Deed with the Clallam County Auditor under Auditor's Document No.

16  2011-1263801.  Clallam County, Washington Auditor's website -

17  http://vpn.callam.net.808/recorder/web.  The Trustee's Deed conveys the property to Federal

18  National Mortgage Association.  *Id.*  Federal National Mortgage Association purchased the

19  property for $433,565.09.  *Id.*  The Court may take judicial notice of the Notice of Trustee's Sale

20  and Trustee's Deed because they were recorded with the Clallam County, Washington Auditor

21  and appear on the county's website.  *See Crawford v. Marion County Election Bd.*, 533 U.S. 181,

22  199 n. 18 (2008) (taking judicial notice of facts from a government website).  There is no

23  evidence in the record that Plaintiff, in any manner, contested the sale.

24

ORDER ON PNC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (B)(6), ON NORTHWEST
TRUSTEE SERVICE INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (B)(5) AND TO JOIN
PNC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (B)(6), AND ON PLAINTIFF'- 3

**B.     PENDING MOTIONS**

On February 1, 2011, PNC filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (b)(6). Dkt. 23. PNC argues that Plaintiff fails to state a TILA rescission claim because the claim is time barred and even if it was not Plaintiff has failed to allege that she can tender the loan proceeds as required under TILA for rescission. *Id.* PNC asserts that Plaintiff's RESPA claim should be dismissed because she did not allege that PNC failed to respond to her May 3, 2010, letter, and Plaintiff has failed to allege harm from any failure to respond to the May 3, 2010, letter. *Id.* PNC argues that Plaintiff's claims pursuant to the Fair Debt Collection Practices Act ("FDCPA") should be dismissed because the act only applies to "debt collectors" and does not include creditors and loan servicers like PNC. *Id.* PNC argues that Plaintiff cannot state a claim against it for "quiet title" because PNC does not have a competing ownership claim on the property, but only a lien. *Id.*

On February 3, 2011, NWTS filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (b)(5) and to Join PNC's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (b) (6). Dkt. 26. NWTS argues that the claims against it should be dismissed because it has not been properly served. NWTS further joins in PNC's motion to dismiss the Amended Complaint for failure to state a claim. *Id.*

Plaintiff failed to respond. On February 28, 2011, an order was issued warning Plaintiff of the potential consequences of failing to respond to the motions to dismiss. Dkt. 29. The motions to dismiss were renoted to March 18, 2011. Plaintiff then filed a response to the motions on March 11, 2011. Dkt. 30. Plaintiff acknowledges that many of her claims should be dismissed, but argues that they should be dismissed without prejudice, with leave to file a second amended Complaint. *Id.*

Defendants oppose allowing plaintiff leave to file a third complaint, arguing that amendment would be futile. Dkt. 31.

**C. ORGANIZATION OF OPINION**

This opinion will first address PNC's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) in conjunction with Plaintiff's motion for leave to file a second amended complaint, and then address NWTS's motion to dismiss pursuant to Fed. R. Civ. P. 12 (b)(5).

## II. DISCUSSION

**A. FED. R. CIV. P. 12 (b)(6) MOTION TO DISMISS/LEAVE TO AMEND A COMPLAINT - STANDARD**

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Fed. R. Civ. P. 12 (b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Dismissal of a complaint may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*internal citations omitted*).

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(*citing Twombly*, at 570). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. First, "a court considering

a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*, at 1950. Secondly, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the pleader to relief." *Moss v. U.S. Secret Service,* 572 F.3d 962, 969 (9th Cir. 2009).

If a claim is based on a proper legal theory but fails to allege sufficient facts, the plaintiff should be afforded the opportunity to amend the complaint before dismissal. *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983). If the claim is not based on a proper legal theory, the claim should be dismissed. *Id.* "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Moss v. U.S. Secret Service,* 572 F.3d 962, 972 (9th Cir. 2009).

Fed. R. Civ. P. 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. Futility alone can justify the denial of a motion to amend." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004)(*internal quotations and citations omitted*).

B.  TILA CLAIMS

Plaintiff's claim for rescission and or damages (to the extent she makes a claim for damages), pursuant to TILA, should be dismissed. Under TILA and "Regulation Z" at 12 C.F.R. § 226.23:

> (1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section...
> (3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act.

12 C.F.R. § 226.23(a)(3); 15 U.S.C. § 1635(a) and (f). Although Plaintiff appears to request that the Court equitably toll the three year deadline in her Amended Complaint, she concedes in her Response that her TILA claims are barred by the statute of limitations, and does not cite any authority that equitable tolling is available for her TILA claims. Dkt. 30, at 2. Plaintiff's TILA claims, asserted against all Defendants, should be dismissed as barred by the statue of limitations. Her motion to file a second amended complaint, in order to restate this claim, should be denied as futile. The Court need not reach Defendants' remaining arguments on Plaintiff's TILA claims.

### C. RESPA CLAIM

RESPA provides in pertinent part:

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

12 U.S.C. § 2605 (e)(1)(A). A "Qualified Written Request" ("QWR") is defined as a written document including the name and account of the borrower and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or

ORDER ON PNC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (B)(6), ON NORTHWEST TRUSTEE SERVICE INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (B)(5) AND TO JOIN PNC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (B)(6), AND ON PLAINTIFF'- 7

provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605 (e)(1)(B). When a loan servicer receives a QWR, RESPA requires that:

> Action with respect to inquiry: Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall
> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes
>    (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>    (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes
>    (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>    (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605 (e)(2).

    In her Amended Complaint, Plaintiff alleges that she sent "[QWR] Demand for Validation of the alleged debt (per FDCPA) and Demand for audits of the entire account on or about May 3, 2010." Dkt. 20, at 4. Plaintiff then asserts that "Response to the [QWR] is required to be acknowledged with 20 days of receipt and concerns are to be addressed within 60 days of receipt pursuant to [RESPA] (RESPA section 6)." *Id.* She then asserts that "Acknowledgement [sic] was received for QWR though failure to respond or deficient response is a violation." *Id.* at 5.

ORDER ON PNC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (B)(6), ON NORTHWEST TRUSTEE SERVICE INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (B)(5) AND TO JOIN PNC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (B)(6), AND ON PLAINTIFF'- 8

1   Defendants' motion to dismiss Plaintiff's RESPA claim should be granted.  Plaintiff's

2   RESPA claim should be dismissed.  Her Amended Complaint fails to allege that any of the

3   Defendants violated RESPA or that she entitled to any form of relief pursuant to RESPA.

4   In her Response, Plaintiff alleges that PNC violated RESPA when it "refused to answer the

5   questions and supply the documentation requested by Plaintiff within 60 days as required by

6   RESPA."  Dkt. 30, at 3.  Plaintiff seeks leave to amend her Complaint a second time to attempt

7   to plead a RESPA claim. *Id.*  PNC asserts that should not be permitted to amend her Amended

8   Complaint because her May 3 letter was not a QWR, and even if it was, Plaintiff has failed to

9   allege harm from any failure to respond to the May 3, 2010, letter.  Dkts. 23 and 31.

10   Plaintiff's motion for leave to amend her Amended Complaint for the second time to attempt

11   to replead a RESPA violation should be denied as futile.  *Johnson,* at 1077.  Plaintiff's May 3,

12   2010, letter is attached to her Amended Complaint, and appears to be some sort of form.  Dkt.

13   20-6.  Plaintiff has failed to show that the May 3, 2010, letter is a QWR as contemplated under

14   RESPA.  Under RESPA, a QWR "includes a statement of the reasons for the belief of the

15   borrower, to the extent applicable, that the account is in error or provides sufficient detail to the

16   servicer regarding other information sought by the borrower."  12 U.S.C. § 2605 (e)(1)(B).  The

17   May 3, 2010, letter in part states,

18   > With our nation's mortgage default crisis and the mortgage scams that have occurred against millions of American families, I am most concerned that
19   > potential fraudulent and deceptive practices have been committed against me in the intentional omission of due consideration in the exchange of my promissory
20   > note, my signing of the mortgage note and security agreement; including deceptive and fraudulent servicing practices to enhance balance sheets; deceptive,
21   > abusive, and fraudulent accounting tricks.

22   Dkt. 20-6, at 2.  It continues:

23   > I hereby **DEMAND** absolute first-hand evidence from you and/or your legal department with regard to the original signed promissory note and an

24

> uncertificated or certificated security concerning account numbers 0005511094. In the event you refuse or fail to supply me with these documents it will be positive confirmation on your part that NATIONAL CITY MORTGAGE never really created and owned a security. I also hereby **DEMAND** that a chain of transfer from you to wherever the security is now be promptly sent to me as well. Absent the actual evidence of the security, I have no choice but to dispute the validity of your lawful ownership, funding, entitlement right, and the current debt you allege I owe. By debt, I am referring to the principal balance you claim I owe; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by you or any trust or entity you may service or subservice for.

*Id.* Plaintiff's letter does not offer any reasonable "statement of the reasons for [Plaintiff's] belief . . . that [her] [mortgage] account is in error" as is required under RESPA. *See Eifling v. National City Mortg.*, 2011 WL 893233 (W.D. Wash. 2011)(rejecting letter from borrowers because it failed to contain specific reasons why they felt their account was in error, was a general inquiry regarding the account, and was a broad request for several categories of documentation). It is instead, primarily, a repudiation of the national lending industry, and does not meet the first portion of the definition of a QWR. Dkt. 20-6.

Additionally, Plaintiff's May 3, 2010, letter fails to meets the QWR's requirement that it "provide sufficient detail to the servicer regarding other information sought by the borrower." Plaintiff's May 3, letter requests hundreds of pages of documents, including "certified or uncertified securities," "pool agreements," "deposit agreements," "servicing agreements," "custodial agreements," "master purchasing agreements," "issuer agreements," "commitment to guarantees," "trust agreements," a "certified copy of the note," and several other documents. *Id.* Plaintiff makes no showing that this type of broad request for any and all documents was the type of request covered under RESPA. This letter, like the letter in *Eifling*, should not be construed as a QWR. Plaintiff cites no authority to the contrary.

1   Additionally, even assuming that Plaintiff's May 3 letter is a QWR under RESPA, Plaintiff

2   has not mentioned any concrete injury she suffered as a result of PNC's alleged failure to

3   completely respond to all her demands in the letter.  Further, the property has now been sold,

4   and sold for more than was due in the original promissory note.  Plaintiff fails to address whether

5   she still has a claim under RESPA as a result.

6   Allowing amendment of the Complaint on this claim would be futile.  Plaintiff's motion to

7   amend her Amended Complaint should be denied.

8   **D.  QUIET TITLE CLAIM**

9   In Washington, a plaintiff in a quiet title action must set forth in the complaint the nature of

10  their "estate, claim or title to the property, and the defendant may set up a legal or equitable

11  defense to plaintiff's claims; and the superior title, whether legal or equitable, shall prevail."

12  RCW 7.25.120.

13  PNC originally argued that Plaintiff can not state a claim against it for "quiet title" because

14  PNC does not have a competing ownership claim on the property, but only a lien on the property.

15  Dkt. 23.  PNC now argues that the quiet title claim cannot be maintained because the subject

16  property has now been sold at a Trustee's Sale.  Dkt. 31.  The property has now been conveyed

17  to the Federal National Mortgage Association.  Plaintiff concedes in her Response that she failed

18  to properly plead a quite title action in her Amended Complaint.  Dkt. 30.  Although she seeks to

19  leave to file a Second Amended Complaint and re-plead a quiet title claim, she fails to address

20  the effect of the Trustee's Sale and what, if any, possible "estate, claim, or title" she has to the

21  subject property.  Plaintiff's quiet title claim should be dismissed and her motion for leave to file

22  a Second Amended Complaint to attempt to restate this claim should be denied as futile.

23

24

### E. FDCPA CLAIM

The FDCPA applies to "debt collectors." 15 U.S.C. § 1692a(6). "The law is well settled that FDCPA's definition of debt collector 'does not include the consumer's creditors, a mortgage servicing company, or any assignee of the debt.'" *See Lal v. American Home Servicing, Inc.*, 680 F.Supp.2d 1218, 1224 (E.D. Cal.2010) (*quoting Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.1985)).

PNC argues that Plaintiff's claims pursuant to the FDCPA should be dismissed because the act only applies to "debt collectors" and does not include creditors and loan servicers like PNC. Dkt. 23. Plaintiff concedes that her FDCPA claim "was not properly plead," and again moves to file a second amended complaint. Dkt. 30, at 3. Plaintiff fails to cite any authority or in any other manner address the issue of whether the FDCPA applies to creditors or mortgage servicers like PNC. Plaintiff's FDCPA claim should be dismissed and her motion to amend her complaint regarding this claim should be denied as futile.

### F. FED. R. CIV. P. 12 (b)(5) MOTION TO DISMISS - STANDARD

Pursuant to Fed. R. Civ. P. 12 (b)(5), a party may move to dismiss a case for insufficient service of process. Plaintiff concedes that NWTS's motion to dismiss pursuant to Fed. R. Civ. P. 12 (b)(5) should be granted. Dkt. 30, at 2. Plaintiff's claims, asserted against NWTS, should be dismissed for insufficient service of process.

### G. CONCLUSION

The Court is sympathetic to Plaintiff's plight. Plaintiff however, has failed to state claims to relief that are plausible on their face. *Iqbal*, at 1949. Further, allowing Plaintiff to amend her Amended Complaint, particularly now that her house has been sold at a trustee's sale, would be futile. *Johnson*, at 1077. Plaintiff acknowledges that her TILA claims are barred by the statute

of limitations. Her letter of May 3, 2010, is not a QWR under RESPA, and so she is not entitled to relief under RESPA. Plaintiff has provided no reasonable basis that she has any interest in the property now that it has been sold, and so cannot bring a quiet title action. There is no basis to conclude that the FDCPA applies to creditors and loan servicers like PNC. This case should be dismissed.

### III. ORDER

- PNC's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (b)(6) (Dkt. 23), joined by Northwest Trustee Service Inc. (Dkt. 26), **IS GRANTED**,
- Northwest Trustee Service Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (b)(5) (Dkt. 26) **IS GRANTED**
- Plaintiff's motion for leave to file a second amended complaint (Dkt. 30) **IS DENIED** because amendment of the Amended Complaint would be futile;
- This case is **DISMISSED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 25th day of March, 2011.

*/s/ Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge

ORDER ON PNC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (B)(6), ON NORTHWEST TRUSTEE SERVICE INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (B)(5) AND TO JOIN PNC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (B)(6), AND ON PLAINTIFF'- 13